## APPEAL OF G. S. STEWART CO.

Docket No. 3065.   Submitted May 26, 1925.   Decided October 27, 1925.

In 1903 taxpayer purchased certain buildings located upon leased land, together with machinery installed therein, and took over the lease on the land, expiring December 31, 1910, with the right of renewal. On January 1, 1911, the lease was renewed for a term of 10 years, expiring December 31, 1920, and contained no provision for renewal but provided that taxpayer should remain in possession of the premises upon the expiration of the lease for a period of 60 days for the purpose of removing the buildings and equipment. *Held*, upon the evidence submitted, that for the years 1918, 1919, and 1920 taxpayer was entitled to a deduction for exhaustion of the cost of the buildings and machinery based upon a useful life of 18 years for the buildings and 10 years for the machinery.

*E. J. Brunenkent, Esq.*, for the taxpayer.
*A. H. Fast, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of deficiencies in income and profits tax for the calendar years 1918, 1919, and 1920, in the amounts of $4,920.62, $4,328.12, and $980.15, respectively, arising in part from the refusal of the Commissioner to allow the taxpayer to deduct, in each of the years, for exhaustion of buildings and machinery owned by it, 20 per cent and 10 per cent, respectively, for 1918, 30 per cent and 20 per cent for 1919, and 15 per cent and 20 per cent for 1920, so as to reflect the salvage value of such buildings and machinery, upon the termination of the lease on the land upon which said buildings and machinery were located.

The Commissioner allowed the taxpayer a deduction for exhaustion, wear, and tear in each of the years of 3 per cent on buildings and 10 per cent on machinery, based upon their probable life.

### FINDINGS OF FACT.

Taxpayer is an Ohio corporation with principal offices at Norwalk, engaged in the business of manufacturing cedar chests, flat poles, screens, and household and department-store decorative articles.

In 1901 its predecessor leased from the Lake Shore & Michigan Southern Railway Co. two parcels of land at Norwalk, for a term of 10 years, with the right of renewal for another term of 10 years. At the same time certain buildings located upon the land were purchased from the railway company and certain machinery was installed therein. In 1903 the taxpayer purchased the buildings and the machinery and took over the lease on the land. On January 1, 1911, the lease was renewed, pursuant to the provision contained therein, for another term of 10 years, to expire December 31, 1920. This lease contained no provision for renewal, and taxpayer was advised by the railway company that it would not consider a renewal of the lease until its expiration.

Subsequent to the execution of the lease on January 1, 1911, the taxpayer, through its president, continued its efforts to obtain assurance from the railway company that it would renew the lease upon its expiration. Being unable to obtain any such assurance, the taxpayer took up with the railway company the matter of purchasing the land upon which the buildings were located, but on March 1, 1917, it was advised by the railway company that it did not desire to sell the land and that it would not consider the taxpayer's offer to purchase.

Subsequent to March 1, 1917, the taxpayer obtained the assistance of friends of the officers of the railway company and continued its endeavor to induce it to sell the land held by it under lease, but

without success. During the year 1918, therefore, the taxpayer, believing that it would be unable to renew the lease or purchase the property, purchased certain land across the street from its plant for the purpose of erecting thereon buildings in which to carry on its business after the expiration of the lease with the railway company on December 31, 1920. The buildings were of brick and wood construction and were of such character that they could not have been salvaged upon expiration of the lease for more than the cost of removal. The machinery installed in the buildings had a useful life of 10 years.

In its returns the taxpayer took deductions for exhaustion of 20 per cent and 10 per cent, respectively, for the year 1918; 30 per cent and 20 per cent, respectively, for the year 1919; and 15 per cent and 20 per cent, respectively, for the year 1920, for the purpose of reflecting the salvage value of the buildings and machinery upon the termination of the lease upon the land.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on consent or on 10 days' notice, under Rule 50.

### OPINION.

LITTLETON: The issue presented in this appeal concerns the question of the amount which the taxpayer was entitled to deduct for exhaustion, wear and tear of property used in carrying on its business during the years 1918, 1919, and 1920.

In 1901 the predecessor of the taxpayer leased from the Lake Shore & Michigan Southern Railway Co. certain land for a period of 10 years, with the right, upon the expiration of the lease, to renew the same for another term of 10 years, and at the same time purchased from the railway company buildings located thereon. In 1903 the taxpayer purchased the buildings and machinery installed therein and took over the lease on the land. Upon its expiration, on December 31, 1910, the lease was renewed for another term of 10 years, expiring December 31, 1920, without the right of renewal. The last-mentioned lease contained a provision that the lessee should have the right to remove the buldings and equipment, and to continue in possession of the land for this purpose for a period of 60 days after the expiration of the lease. At the time of the execution of the lease on January 1, 1911, taxpayer endeavored to have the railway company consent to a renewal of the lease upon its expiration on December 31, 1920, but this the railway company refused to do. Subsequently, the taxpayer endeavored to purchase the land upon which the buildings were located, but its offer was likewise

refused by the railway company. As a result the taxpayer purchased certain land near its place of business with a view of erecting thereon buildings in which to carry on its business.

In its returns for the years prior to 1918, the taxpayer deducted only $2,500 for exhaustion, wear and tear of the buildings, and likewise deducted only the amount of $2,500 for exhaustion, wear and tear of machinery. We are asked by the taxpayer to reject the Commissioner's allowance of a deduction for exhaustion of 3 per cent on buildings and 10 per cent on machinery and to permit it to deduct from gross income in each of the years involved, for exhaustion of buildings and machinery, 20 per cent and 10 per cent, respectively, for the year 1918, 30 per cent and 10 per cent, respectively, for the year 1919, and 15 per cent and 20 per cent, respectively, for the year 1920, for the purpose of reflecting the salvage value of such buildings and machinery at December 31, 1920.

Section 234 (a) (7) of the Revenue Act of 1918 provides:

Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

    *         *         *         *         *         *         *

(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.

Under the terms of the lease acquired by the taxpayer in 1903, the buildings had an expected useful life in the business of 18 years, and the taxpayer was entitled to have returned to it, proportionately over that period, or over the physical life of the property, whichever was the shorter, through deduction for exhaustion, the cost of such property together with the cost of additions of a capital nature made thereon from time to time. Under the terms of the lease as it existed at the time the taxpayer purchased the property, it was entitled to have returned to it proportionately in each of the years such percentage of the cost of the property and the cost of capital additions as would reflect their salvage value on December 31, 1920. Had the taxpayer on January 1, 1911, been able to obtain a lease for 10 years, with the right of renewal upon its expiration for another term of 10 years, it would have from that date been entitled to exhaust the then unextinguished cost of the property over an expected life of 20 years. The railway company, however, declined to incorporate into the lease a provision for renewal upon its expiration, and the deduction to which taxpayer was entitled at the time it purchased the property was not changed. We have no evidence of the original cost of the buildings and machinery, or of the date or cost of additions thereto prior to 1918. The Commissioner determined that the cost of the property plus additions up to December 31, 1917, was $35,165.20, and that additions costing $500 were made in the year 1920, and allowed depreciation at the rate of 3 per cent per annum for each of the years involved. He determined that the machinery had a cost at December

31, 1917, of $37,912.06, plus additions costing $1,602.37 during 1918, $3,356.60 during 1919, and $4,484.20 during 1920, on which cost he allowed an annual deduction for exhaustion at the rate of 10 per cent.

The evidence shows that the buildings had a physical life at the time of purchase by taxpayer of at least 30 years, and under the terms of the lease an expected useful life in the business of 18 years. The taxpayer should be allowed for each of the years involved a deduction for exhaustion of the cost of the buildings, based upon a useful life of 18 years, no competent evidence having been submitted showing that the March 1, 1913, value of the buildings was greater than cost. *Appeal of National City Bank of Seattle*, 1 B. T. A. 139; *Appeal of Even Realty Co.*, 1 B. T. A. 355; *Appeal of Richmond Dairy Lunch*, 1 B. T. A. 876.

Since the Commissioner has allowed a deduction for each of the years involved for exhaustion of machinery at the rate of 10 per cent per annum, based upon a useful life in the business of 10 years, which is less than the term of the lease, and no evidence having been submitted showing that the rate of 10 per cent is inadequate, his action in this regard is approved. *Appeal of Gladding Dry Goods Co.*, 2 B. T. A. 336.